**GOOD SHEPHERD HEALTH FACILITIES OF COLORADO, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**The DEPARTMENT OF HEALTH OF the State of Colorado; Thomas M. Vernon, Executive Director of the Colorado Department of Health; Department of Social Services of the State of Colorado; Irene Ibarra, Executive Director of the Colorado Department of Social Services, Defendants–Appellants.**

**No. 88CA0914.**

Colorado Court of Appeals, Div. I.

Aug. 17, 1989.

Rehearing Denied Oct. 5, 1989.

Certiorari Granted March 5, 1990.

No appearance for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Anthony S. Trumbly, Asst. Atty. Gen., Denver, for defendants-appellants.

Oxman & Oxman, P.C., Irving I. Oxman and Gary L. Crandell, Denver, for Harry Yaffee, Receiver for plaintiff-appellee.

Opinion by Judge RULAND.

Defendants, Colorado Department of Health and the Colorado Department of Social Services (Social Services), appeal a district court order requiring Social Services to pay certain medicaid reimbursements to a receiver appointed for the Montclair Health Care Center owned by plaintiff, Good Shepherd Health Facilities, Inc. (Good Shepherd). We affirm.

The Department of Health summarily suspended the license of Montclair for violation of various state and federal laws and regulations. A receiver was appointed pursuant to § 25–3–108, C.R.S. (1982 Repl. Vol. 11). The receiver requested termination of the receivership within a few days after his appointment because it was not possible to keep the facility open on a financially sound basis. This conclusion was based upon the loss of patients. The court granted the request and ordered preparation of a final report.

Upon the closing of the facility, the receiver filed a final report which included a claim for Medicaid reimbursements due Good Shepherd from Social Services for approximately one and one-half months as assets of the receiver. Employees of the facility then sought to intervene in the proceeding to assert claims for unpaid wages. Social Services also filed a claim for reimbursement of amounts advanced to furnish personnel needed to maintain patient care pending appointment of the receiver.

In response to the receiver's report, Social Services requested that the reimbursement amount due for the facility's final month of operation be retained by it pending completion of audits. Social Services alleged that these funds were required to offset prior overpayments made to Good Shepherd for nursing care costs and shortages discovered in the personal needs accounts of Medicaid patients. A personal needs account consists of funds set aside for a patient to purchase items such as clothing. *See* § 26–4–103(4.4), C.R.S. (1982 Repl.Vol. 11). The district court denied this request and ordered Social Services to

pay the full amount requested by the receiver into the registry of the district court.

The court determined that the funds should be first applied to reimburse personal need funds for the facility's former patients as well as patient prepayments. The court then directed payment of the receiver's fees and expenses together with outstanding payroll of the former employees. The receiver was required to retain any remaining funds for distribution in payment of various taxes based upon a later determination of priority among the taxing authorities.

While this appeal was pending, the parties stipulated as to payments for the patients, the receiver, and the employees from the amounts deposited in the registry over and above the amount due from Social Services for the final month of operation. The sole issue on appeal is whether Social Services has the authority to withhold the final month's payment claimed by the receiver.

## I.

The authority of Social Services to audit a facility's records relating to Medicaid benefits paid for nursing care costs and to personal needs accounts is not disputed by the receiver. Social Services may also offset any nursing care cost overpayments against reimbursement amounts due the facility. Section 26–4–112(2), C.R.S. (1988 Cum.Supp.).

Department of Social Services Regulation No. 8.444F, 10 Code Colo.Reg. 2505–10, provides that the reimbursement amount due for the final month of operation of a facility terminating its participation in the Medicaid program:

"shall be withheld until audits have been completed to determine that no adjustments resulting in monies due the facility, the state, or the patients remains unadjusted. Such reimbursement shall continue to be withheld until all questions and issues raised by the audits are resolved."

Based upon the foregoing statute and the regulation, Social Services contends that the trial court erred in ordering it to pay the disputed funds into the registry for distribution by the receiver. Social Services argues that the receiver necessarily occupies the same position as Good Shepherd under the regulation and that, therefore, the funds may be withheld and applied to offset adjustments due from Good Shepherd. We disagree.

As for the personal needs accounts, legislation authorizing Social Services to offset amounts due a facility for any shortages in these accounts was not effective until after Montclair was closed. Thus Social Services had no right to claim any offset for those funds. *Smith, Harst & Associates, Inc. v. Colorado Department of Social Services,* 780 P.2d 20 (Colo.App.1989). *See* Colo. Sess. Laws 1988, ch. 217 at 1067. As a result, there would be no basis to withhold amounts from the receiver for this purpose under the quoted regulation.

■ As to any adjustment due for overpayment of nursing care costs, we recognize that generally a receiver stands in the shoes of the entity in receivership and may assert no greater rights than the entity whose property the receiver was appointed to preserve. *Seckler v. J.I. Case Co.,* 141 Colo. 395, 348 P.2d 368 (1960). However, we agree with the analysis of the trial court that this rule has been modified by the General Assembly for receivership proceedings instituted pursuant to § 25–3–108 insofar as Medicaid payments from Social Services are involved.

In resolving the issue before us, we must determine the legislative intent as evidenced by the words of the statutes involved as well as the entire statutory scheme. *See Kern v. Gebhardt,* 746 P.2d 1340 (Colo.1987). Moreover, we must assume that the General Assembly intended "a result feasible of execution." Section 2–4–201, C.R.S. (1980 Repl.Vol. 1B).

Section 25–3–108 expressly provides that the statutory purpose is to safeguard against "potential transfer trauma" resulting from relocation of patients, when, as here, a long-term health care facility is closed because of violation of applicable laws and regulations. In order to justify

the receivership, the trial court must specifically find that a necessity exists to continue care on a temporary basis to avoid the referenced trauma. *See* § 25–3–108(5)(c).

Consistent with the obvious necessity of funding the receivership, § 25–3–108(7) requires that Social Services issue the requisite license to the receiver and "reimburse the receiver for the . . . medicaid residents pursuant to § 26–4–110(5), C.R.S.1973." Section 26–4–110(5), C.R.S. (1988 Cum. Supp.), in turn, describes in detail the methods to be used by Social Services in calculating reimbursement amounts for nursing home vendors.

■ A receiver is an officer of the court. *See McClain v. Saranac Machine Co.*, 94 Colo. 145, 28 P.2d 1009 (1934). Pursuant to § 25–3–108(8) the receiver for a long-term health care facility must be a licensed nursing home administrator and the receiver must post a bond with adequate sureties. The trial court is required to determine the specific duties and responsibilities of the receiver in operating the facility and the term of the receivership may not exceed 180 days unless the term is extended by court order pursuant to § 25–3–203(10).

■ Thus, it is apparent that the receiver does not stand in the shoes of the facility's owner with reference to day to day operation of the facility. It is further apparent that the statutory purpose of the receivership could be totally frustrated if funds required for that purpose may be withheld by Social Services. The receiver could not fulfill his duties, and those employees of the facility who assisted the patients in avoiding the prescribed trauma would not be compensated for up to 30 days of work. Accordingly, we hold that Social Services Regulation No. 8.444F may not be relied upon to withhold payments due the receiver.

The judgment is affirmed.

PLANK, J., concurs.

PIERCE, J., dissents.

Judge PIERCE dissenting.

I dissent from the conclusion reached by the majority in this case. It is my view that the legislation, as enacted by the General Assembly and augmented by the regulations of the Department of Social Services, sets forth a rational scheme which, while not as equitable as the plan devised by the majority, dictates the result which must be reached in this case.

Contrary to the ruling of the trial court, a receiver appointed pursuant to § 25–3–108 acts to preserve the health care facility in accordance with established principles of receivership law. Section 25–3–108(8), C.R.S. (1982 Repl.Vol. 11). One such principle is that the receiver stands in the shoes of the entity in receivership and may assert no greater rights than the entity whose property he was appointed to preserve. *Seckler v. J.I. Case Co.*, 141 Colo. 395, 348 P.2d 368 (1960). I do not believe that C.R.S. § 25–3–108 modifies this principle.

Under the Colorado Medical Assistance Act, Social Services has implicit authority to audit a facility's records relating to Medicaid benefits paid for nursing care costs, as well as personal needs accounts. Sections 26–4–110(5)(a), C.R.S. (1988 Cum. Supp.) and 26–4–115.5(2), C.R.S. (1982 Repl. Vol. 11). Social Services may then offset any cost overpayments and personal needs accounts shortages against reimbursement amounts due the facility. Sections 26–4–112(2) and 26–4–116(3.5), C.R.S. (1988 Cum. Supp.). I recognize that under *Smith, Harst & Assoc., Inc. v. Department of Social Services*, 780 P.2d 20 (Colo.App. 1989), Social Services would not be able to offset personal needs accounts shortages; however, I decline to follow that holding as it is without statutory or case authority.

This statutory scheme is broad enough to provide authority for Department of Social Services Regulation No. 8.444F, 10 Colo. Code Reg. 2505–10, as quoted by the majority, allowing Social Services to withhold the reimbursement amount due for the final month of operation until audits have been completed to determine various rights to those funds.

This regulation is consistent with § 25–3–108(11), C.R.S. (1982 Repl.Vol. 11) which requires that the district court order a final accounting upon the termination of a receivership. Reading this statute in conjunction with the above-mentioned authorities, I would hold that Social Services is entitled to withhold the reimbursement amount due for the last month of operation until a final accounting has been completed and the rights of the parties to the funds have been determined. I would also conclude that § 26–4–112(2)(b), C.R.S. (1988 Cum.Supp.) does not operate to limit the offset amount where, as here, the operation of the facility is not ongoing.

Therefore, I would reverse the judgment and remand the cause to the district court with instructions that a final accounting be ordered and that, after a hearing on the matter, payment be made accordingly.